**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION**

| | | |
|---|---|---|
| **DANIEL ANDRES DURAN** | § | |
| **TDCJ # 02297580,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **NO.  EP-19-CV-358-PRM-MAT** |
| | § | |
| **UMC CHRISTINA MORTON,** | § | |
| | § | |
| **Defendant.** | § | |

## REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE

In this litigation, Plaintiff Daniel Andres Duran ("Plaintiff") brings a civil rights complaint, asserting violations of "inmate rights[,] patient rights" and medical negligence. (ECF No. 13). Plaintiff was previously incarcerated by the Texas Department of Criminal Justice ("TDCJ") at the Walker Sayle Unit in Breckenridge, Texas and proceeds with this suit pro se and in forma pauperis. Before the Court is "Defendant Cristina Morton's Motion to Dismiss" (ECF No. 29), filed by Defendant Cristina Morton, R.N. ("Defendant"),[1] seeking dismissal for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure and, in the alternative, for failure to state a claim on which relief can be granted, pursuant to Rule 12(b)(6). For the following reasons, the Court **RECOMMENDS** that the motion be **GRANTED**.

## I.      BACKGROUND

A.  FACTUAL BACKGROUND[2]

---

[1] Defendant asserts in her motion that Plaintiff incorrectly named her as "UMC Christina Morton."

[2] While recounting the factual background, the Court addresses only the facts relevant to the immediate Report

In considering the motion, "the plaintiff's complaint is to be construed in a light most favorable to the plaintiff, and the allegations contained therein are to be taken as true." *Oppenheimer v. Prudential Secs. Inc.*, 94 F.3d 189, 194 (5th Cir. 1996).[3] On July 26, 2019, Plaintiff arrived at the El Paso County Jail ("EPCJ") in a leg cast and crutches. (ECF No. 13, at 4). Plaintiff was seen by a nurse when he was being booked, and he asked her if a shower chair would be provided to him. (ECF No. 15, at 1). The nurse said yes, a shower chair would be provided. *Id.* Through July 29, the guards at the EPCJ told Plaintiff that a shower chair was not available because someone else was using it. *Id.*

After "about a week," Plaintiff was transferred to the El Paso County Jail Annex ("EPCJ Annex"). *Id.* At sick call, on a date not stated, Plaintiff told an unnamed nurse at the EPCJ Annex that he had not showered "for a week or so since the [EPCJ]." *Id.* He asked the nurse for a shower chair, and the nurse told Plaintiff to "simply ask the guard on the floor at the time . . . ." *Id.* Plaintiff states he did so "repeatedly." *Id.* Plaintiff states that three officers[4] denied him a shower chair, telling him they do not have one, and that Plaintiff is "in jail and [does not] have rights." *Id.*

On August 7, 2019, Plaintiff had not showered for two weeks, and he had an unpleasant smell coming from his cast. (ECF No. 15, at 4). Other inmates threatened to "jump" Plaintiff because of his body odor unless Plaintiff took a shower immediately. *Id.* Plaintiff claims he was "emotionally broken by the fact that [he] didn't want to get jumped," and though he tried to

---

and Recommendation.

[3] A pro se plaintiff's complaint shall be construed liberally and held to a less stringent standard than those drafted by attorneys. *See Windland v. Quarterman*, 578 F.3d 314, 316 (5th Cir. 2009); *Haines v. Kerner*, 404 U.S. 519, 520 (1972).

[4] Plaintiff says the three officers were "Cpl. Beard," "Cpl. E. Ramirez," and officer "I. Holguin." (ECF No. 15, at 1). However, Plaintiff has not named these officers as defendants.

explain his situation, the other inmates "didn't want to hear it until [Plaintiff] showered." (ECF No. 15, at 4). Plaintiff states that he took his first shower that day. *Id.* Additionally, he states that he fell while showering without the use of a shower chair. *Id.* at 2. Plaintiff claims that he refractured his right fibula, which was in the process of healing, and had sharp pain in his left bone, which had just healed. *Id.* at 3. Plaintiff claims he also fell and refractured his bones on August 9, 11, 14, 17, and 21, when he fell in the shower while showering without the use of a shower chair. *Id.* at 2–3. When he fell, he cried out to the officers on the floor, but the officers mocked him. *Id.* at 3. He did not receive medical attention "because the officers would deny it to [him] along with the nurses" who would tell him that he was "faking it" even though they saw him in excruciating pain. *Id.* However, Plaintiff states that he knew he had refractured his bones because he "felt the exact pain" he had felt when he broke them previously. *Id.* at 3. He claims that his bone moved within his body "hurting tremendously worst [sic] than when [he] first broke it." *Id.*

Plaintiff alleges that he would ask the nurses on medication runs for a shower chair. (ECF No. 15, at 2). The nurses in turn would address it to the officers, who would say yes. *Id.* However, once the nurses left the floor "the officers would come back and tell [Plaintiff] that the nurse [sic] don't run the show they do." *Id.* Plaintiff also claims that he "tried to speak with the supervisor of the medical field by submitting a written request to the nurses doing the medication runs. But every time the nurses would arrive they were to [sic] busy flirting with officers [and] paying no attention to any client." *Id.* In response to a subsequent court-issued questionnaire, Plaintiff further specified that he "staff related" written requests for a shower chair, "addressing [his] necessity for a showering chair" on August 7, 14, and 21, 2019. (ECF No. 21, at 1). Plaintiff asserts that Defendant denied these requests. *Id.* According to Plaintiff,

he was never provided with a shower chair. (ECF No. 15, at 4).

On August 28, 2019, Plaintiff "put in a sick call" after he finished the pain medication that was prescribed to him at the hospital. (ECF No. 21, at 2; ECF No. 15, at 5). He then saw an unnamed doctor by video chat. (ECF No. 21, at 2; ECF No. 15, at 5). According to Plaintiff, the doctor said that he was not going to prescribe Plaintiff pain medication, (ECF No. 21, at 2), and told Plaintiff that he only gets medication one time. (ECF No. 15, at 5). Plaintiff asked the doctor who Plaintiff could speak to about it. (ECF No. 21, at 2). The doctor responded that "the Director Christina [sic] Morton gives specific orders they go by." *Id.* The doctor gave Plaintiff "the information to be able to address this situation to Defendant Christina Morton," and Plaintiff "immediately submitted several written requests" to her. *Id.* Plaintiff received a response to the requests through the attending nurse who told Plaintiff that Defendant had received his requests but that Defendant "didn't have time for [Plaintiff] and that [Plaintiff's] request was unrealistic expectation [sic]." *Id.*

Plaintiff had also been prescribed physical therapy two times per week. (ECF No. 15, at 5). However, Plaintiff claims that he only went once or twice a month, and it was too late when they started sending him. *Id.* at 6. Plaintiff asserts that he "had already refractured [his] bones and learned how to deal with pain mentally. [He] pushed [himself] to physically treat [himself] therapeutically [sic] and learned how to walk with excruciating pain." *Id.*

B. PROCEDURAL BACKGROUND

On December 5, 2019, Plaintiff filed a motion to proceed with this case in forma pauperis. (ECF No. 1). After supplementing his application and updating his address, Plaintiff's motion was granted on February 24, 2020 (ECF No. 11), and Plaintiff's Complaint was filed into the record. (ECF No. 13). In his Complaint, Plaintiff brings claims of "violation[s] of

inmate rights and patient rights" against Defendant Cristina Morton. (ECF No. 13). During a screening of Plaintiff's Complaint, the Court issued two questionnaires to further clarify Plaintiff's claims and allegations (ECF Nos. 12 & 21), to which Plaintiff filed answers. (ECF Nos. 15 & 21).

Defendant was then served and subsequently filed the instant Motion to Dismiss and an Answer on May 22, 2020. (ECF Nos. 29 & 30). Defendant moves the Court to dismiss Plaintiff's claims for lack of subject matter jurisdiction, or in the alternative, for failure to state a claim upon which relief can be granted. (ECF No. 29). Plaintiff did not initially file a response to the motion. However, a notice of change of address was filed on July 6, 2020. (ECF No. 31). Accordingly, the Court provided Plaintiff with additional time to file any response. (ECF No. 32). Plaintiff then sought, and was granted, leave for an extension of time to file a response. (ECF Nos. 35 & 36). Plaintiff filed his response in opposition to the instant motion on August 26, 2020. (ECF No. 38). Defendant thereafter filed a reply on August 28, 2020. (ECF No. 39). Accordingly, the matter is now ripe for disposition.

## II.    LEGAL STANDARD

### A.  RULE 12(B)(1) MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION

Federal courts are "courts of limited jurisdiction" and "possess only that power authorized by Constitution and statute." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).  As such, a court must dismiss an action at any time that it determines that it lacks subject matter jurisdiction. Fed. R. Civ. P. 12(h)(3). A motion to dismiss brought under Rule 12(b)(1) of the Federal Rules of Civil Procedure challenges the court's subject matter jurisdiction to hear the case. The party asserting jurisdiction—the plaintiff—bears the burden of proving that jurisdiction exists. *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001).

Subject matter jurisdiction, or the lack thereof, may be found in: "(1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Ramming*, 281 F.3d at 161. When "a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, the court should consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits [to prevent] a court without jurisdiction from prematurely dismissing a case with prejudice." *Id.*

B. RULE 12(B)(6) MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM ON WHICH RELIEF CAN BE GRANTED

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of a pleading to state a claim upon which relief can be granted. To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In considering the motion, "the plaintiff's complaint is to be construed in a light most favorable to the plaintiff, and the allegations contained therein are to be taken as true." *Oppenheimer v. Prudential Secs. Inc.*, 94 F.3d 189, 194 (5th Cir. 1996). Moreover, a pro se plaintiff's complaint shall be construed liberally and held to a less stringent standard than those drafted by attorneys. *See Windland v. Quarterman*, 578 F.3d 314, 316 (5th Cir. 2009); *Haines v. Kerner*, 404 U.S. 519, 520 (1972). The court may not look beyond the complaint to determine whether the plaintiff has stated a legally cognizable claim. *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999).

Pursuant to Rule 12(d) of the Federal Rules of Civil Procedure, where matters outside of the pleadings are presented under a Rule 12(b)(6) motion and the Court does not exclude

such evidence, the Court must treat the motion as one for summary judgment under Rule 56 of the Federal Rules of Civil Procedure. *See* Fed. R. Civ. P. 12(d). Before ruling on a converted motion for summary judgment, all parties must be given a reasonable opportunity to present all the material that is pertinent to the motion. *Id.* The Court is not required by Rule 12(d) to provide express notice that it intends to treat a motion to dismiss as a motion for summary judgment. *See Mackey v. Owens*, No. 98-60758, 1999 WL 423077, at *2 (5th Cir. June 2, 1999) (per curiam) (unpublished); *Turcheck v. United States*, No. 1:16-CV-0061-BL, 2017 WL 5004831, at *5 (N.D. Tex. Oct. 12, 2017), *report and recommendation adopted by* No. 1:16-CV-061-C, 2017 WL 5028197 (N.D. Tex. Oct. 30, 2017).

Treating a motion to dismiss as a motion for summary judgment is proper "when the nonmovant is aware that additional materials have been attached to the motion to dismiss, they have had time to respond to the motion, and they are aware that the court may rule on the motion using additional materials." *Bonnet v. Ward Cty.*, No. P-12-CV-085, 2012 WL 12877956, at *2 (W.D. Tex. Nov. 30, 2012) (citing *Isquith v. Middle S. Utils., Inc.*, 847 F.2d 186, 195–96 (5th Cir. 1988); *Clark v. Tarrant Cty.*, 798 F.2d 736, 746 (5th Cir. 2004)). "[T]he simple act of placing matters outside the pleadings before the court provides adequate notice that a motion to dismiss may be converted into a motion for summary judgment." *Mackey*, 1999 WL 423077, at *2.

C.  SUMMARY JUDGMENT

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In determining whether there is a genuine issue of material fact, a court must view all evidence and inferences in the light most favorable to the nonmovant. *Hinojosa v. Butler*, 547

F.3d 285, 295 (5th Cir. 2008).

The moving party bears the burden of informing the court of the portions of the record that demonstrate an absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). After the movant has met this burden, the burden shifts to the nonmovant who must "go beyond the pleadings" to show the existence of a genuine issue of material fact. *See id.* at 324. While a court may not grant summary judgment simply because a motion is unopposed, "[i]f a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may[, *inter alia*,] consider the fact undisputed [and] grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it." Fed. R. Civ. P. 56(e).

## III.   ANALYSIS

A. Motion to Dismiss Under Rule 12(b)(1) for Lack of Subject Matter Jurisdiction

Defendant argues that Plaintiff's claims should be dismissed because they are state law medical malpractice claims and Plaintiff has not alleged that Defendant is a "state actor." (ECF No. 29, at 3). Defendant relies on the Supreme Court's ruling in *Minneci v. Pollard* for the proposition that "where the conduct of privately employed personnel amounts to a violation of the Eighth Amendment, and where that conduct is of a kind that typically falls within the scope of traditional state tort law (such as conduct involving allegedly improper medical care), the prisoner must seek a remedy under state tort law." (ECF No. 29, at 4) (citing *Minneci v. Pollard*, 565 U.S. 118, 131 (2012)).[5] Defendant argues that because Defendant is not a state actor, and

---

[5] Defendant relies on the arguments set forth by *Minneci v. Pollard*, a case that considers the constitutional rights

Plaintiff's allegations fit the elements of a health care liability claim under Texas law, the federal courts do not have subject matter jurisdiction over Plaintiff's claims in the instant suit. (ECF No. 29, at 3-4).

Plaintiff makes no argument in response to Defendant's Motion to Dismiss for lack of subject matter jurisdiction. *See* (ECF No. 38) (generally asserting in Plaintiff's Memorandum in Opposition to Defendant's Motion to Dismiss that Plaintiff has pleaded sufficient factual allegations to support his claims).

To dismiss Plaintiff's Complaint based on Defendant's reliance on *Minneci*, the Court would have to find that Plaintiff has made no constitutional claim but instead has made a state law claim that does not rest on an independent source of federal subject matter jurisdiction. That is, Defendant argues that instead of making a claim of a violation of the Eighth[6] Amendment of the United State Constitution, pursuant to 42 U.S.C. § 1983, Plaintiff has asserted a claim of medical malpractice under Texas state law. Therefore, for the Court to dismiss the Complaint on the basis of Defendant's arguments reliant on *Minneci*, it must first find that the claims do not have an independent source of federal subject matter jurisdiction, and then find that it is not appropriate for the federal court to exercise supplemental jurisdiction.

Defendant's arguments reliant on *Minneci* fall short for two reasons. First, *Minneci* considers whether a prisoner could assert a Bivens claim for damages against private prison employees. *Minneci*, 565 U.S. at 118. Here, Defendant asserts that Plaintiff Duran has "loosely

---

of convicted prisoners under the Eighth Amendment. However, Plaintiff Duran is a pretrial detainee. Pretrial detainees, as distinguished from convicted prisoners, as "those individuals who have been charged with a crime but who have not yet been tried on the charge." *Bell v. Wolfish*, 441 U.S. 520, 523 (1979). The constitutional rights of a pretrial detainee "flow from both the procedural and substantive due process guarantees of the Fourteenth Amendment." *Hare v. City of Corinth, Miss.*, 74 F.3d 633, 639 (5th Cir. 1996).

[6] Again, Plaintiff's constitutional rights flow from the Fourteenth Amendment, not the Eighth Amendment. *Hare*, 74 F.3d 633 at 639.

assert[ed] claims . . . [for] 42 U.S.C. § 1983 violations arising from alleged denial of medical care while incarcerated . . . .  (ECF No. 29, at 1). Bivens claims are not analogous to § 1983 violations, and so the Supreme Court's reasoning in *Minneci* is not applicable to the instant Motion to Dismiss.

Defendant argues in her Motion to Dismiss: "[t]his Court lacks subject matter jurisdiction because, per *Minneci*, Plaintiff's claim against [Defendant are] sounds [sic] only in state medical malpractice law." (ECF No. 29, at 6). Pursuant to *Minneci*, Defendant asserts that "Plaintiff may not refashion this state law [health care liability] claim into another type of [federal] cause of action." (ECF No. 29, at 4).

Assuming, *arguendo*, that *Minneci* is applicable to the present case, there is a question of whether the holding in *Minneci* extends to the Court's analysis of subject matter jurisdiction. It is not apparent to this Court whether the coexistence of a validly plead, state health care law claim and a validly plead § 1983 claim in Plaintiff's Complaint would trigger the Court's dismissal of the state law claim for lack of subject matter jurisdiction. Would a finding that Plaintiff's alleged facts fit the elements of a healthcare liability claim under Texas state law require this Court to find a lack of subject matter jurisdiction if Plaintiff's allegations also state a § 1983 claim? Indeed, the *Minneci* Court discusses the existence of an "'alternative, existing process'" in state tort law that "constitutes a 'convincing reason for the Judicial Branch to refrain from providing a new and freestanding remedy in damages.'" *Id.* at 125–26 (quoting *Wilkie v. Robbins*, 551 U.S. 537, 550 (2007)). However, *Minneci* does not address whether the Court has subject matter jurisdiction. In *Minneci*, the Court held that a *Bivens* claim did not exist under the circumstances presented, not that the state law claim existed but should not have

10

been brought in federal court.[7] *Minneci*, 565 U.S. at 120. For the above reasons, Defendant's reliance on *Minneci* is not persuasive to warrant dismissal for lack of subject matter jurisdiction.

The Court may find original subject matter jurisdiction over these claims by establishing the existence of diversity jurisdiction: (1) that the parties are citizens of different states, and (2) the amount in controversy exceeds $75,000, pursuant to 28 U.S.C. § 1332. Furthermore, supplemental jurisdiction exists over a state law claim, pursuant to 28 U.S.C. § 1367(a), "in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." Plaintiff has not offered facts to demonstrate diversity jurisdiction, asserting neither diversity of the parties nor an amount in controversy exceeding $75,000.

However, jurisdiction over any possible state law claim Plaintiff may be making may still be appropriate through exercise of supplemental jurisdiction, pursuant to 28 U.S.C. § 1367(a). Furthermore, the question of whether subject matter jurisdiction exists over any state law claim Plaintiff may have raised depends on whether Plaintiff has also stated a § 1983 claim.

The Court also has original jurisdiction over claims brought pursuant to 42 U.S.C. § 1983. *See* 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."). Therefore, if Plaintiff has stated such a claim, then the Court would assess the propriety of asserting supplemental jurisdiction over any state law claim. *See* 28 U.S.C. § 1367. Thus, to determine

---

[7] The merits of this argument will be discussed *infra* in the section addressing whether Plaintiff has stated a claim upon which relief can be granted.

whether the Court has subject matter jurisdiction over any Texas state law claim under a supplemental jurisdiction theory, it must first determine whether Plaintiff has stated a claim under 42 U.S.C. § 1983.

B.   MOTION TO DISMISS UNDER RULE 12(B)(6) FOR FAILURE TO STATE A CLAIM ON WHICH RELIEF CAN BE GRANTED

Plaintiff styles his claim as a violation of "inmate rights and patient rights," and more specifically, as one for medical negligence. (ECF No. 13, at 4). "To state a claim under [42 U.S.C.] § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988) (citations omitted).

Pretrial detainees have the right not to be denied attention to medical needs by deliberate indifference under the Fourteenth Amendment. *Peña Arita v. United States*, 470 F.Supp.3d 663, 701 (S.D. Tex. 2020). "To prove deliberate indifference, a pretrial detainee must show that the state official [1] knew of and [2] disregarded an excessive risk to the inmate's health or safety." *Id.* (citing *Gibbs v. Grimmette,* 254 F.3d 545, 549 (5th Cir. 2001)). This "deliberate indifference" standard requires more than negligence or oversight. *Peña Arita v. United States*, 470 F.Supp.3d 663, 701 (S.D. Tex. 2020). "[T]o defeat qualified immunity, the plaintiffs must establish that the officers . . . were aware of a substantial and significant risk . . . but effectively disregarded it." *Id.* (citing *Jacobs v. W. Feliciana Sheriff's Dep't*, 228 F.3d 388, 395 (5th Cir. 2000)). This same subjective deliberate indifference standard has been applied to pretrial detainees under the Fourteenth Amendment, as well as convicted inmates under the Eighth Amendment. *See Hare v. City of Corinth, Miss.*, 74 F.3d 633, 648 (5th Cir. 1996).

A serious medical need is "one for which treatment has been recommended or for which the need is so apparent that even laymen would recognize that care is required." *Carlucci v. Chapa,* 884 F.3d 534, 538 (5th Cir. 2018) (citing *Gobert v. Caldwell*, 463 F.3d 339, 345 n.12 (5th Cir. 2006)) (internal quotation marks omitted). "To prevail on a claim for deliberate indifference, the plaintiff must show that a federal actor denied him treatment, ignored his complaints, knowingly treated him incorrectly, or otherwise evidenced a wanton disregard for his serious medical needs." *Carlucci v. Chapa,* 884 F.3d 534, 538 (5th Cir. 2018) (citing *Domino v. Texas Dep't of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001)). "[A] prison official may be held liable under the Eighth Amendment for denying humane conditions of confinement only if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Farmer v. Brennan*, 511 U.S. 825, 847 (1994). "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists" and "must also draw the inference." *Williams v. Hampton*, 797 F.3d 276, 281 (5th Cir. 2015) (quoting *Farmer*, 511 U.S. at 837) (internal quotation marks omitted).

Plaintiff asserts two claims of deliberate indifference. The first is that Defendant denied him the use of a shower chair. The second is that Defendant denied him pain medication.

1. Whether Plaintiff has stated a claim of deliberate indifference against Defendant on the basis of denying use of a shower chair.

Plaintiff claims that he submitted written requests to Defendant for a shower chair on August 7, 14, and 21, 2019. (ECF No. 21, at 1). He claims to have addressed his necessity for a shower chair in each request and "staff related"[8] these requests to Defendant. *Id.* Plaintiff

---

[8] For the purposes of this Report & Recommendation the Court assumes that when Plaintiff says he "staff related" the written requests to Defendant that he means that he handed a written request to a staff member who then

alleges these requests were denied. (ECF No. 21, at 1). Defendant argues that Plaintiff has not

stated a claim because Defendant is not a state actor and the claim does not rise to the level of

deliberate indifference to a serious medical need. (ECF No. 29, at 5–7). Defendant further

argues that even if Plaintiff alleged that Defendant was a state actor, he has still not stated a

claim because he has not alleged that she "affirmatively participated in the alleged substandard

medical care or implemented an unconstitutional policy that resulted in injury to Plaintiff." *Id.*

at 7.

"An inmate must rely on prison authorities to treat his medical needs; if the authorities

fail to do so, those needs will not be met." *Estelle v. Gamble*, 429 U.S. 97, 103 (1976). In *West*

*v. Atkins*, which arose in the context of a private medical care contractor of a prison, the

Supreme Court held that the private physician/respondent acted under color of state law when

providing medical services to state prison inmates because the physician was under contract

with the state to provide such services and the inmates were not free to seek medical services

from physicians not authorized by the state. 487 U.S. 42, 54–55 (1988).[9]

> Whether a physician is on the state payroll or is paid by contract,
> the dispositive issue concerns the relationship among the State,
> the physician, and the prisoner. Contracting out prison medical
> care does not relieve the State of its constitutional duty to provide
> adequate medical treatment to those in its custody, and it does not
> deprive the State's prisoners of the means to vindicate their
> Eighth Amendment rights. The State bore an affirmative
> obligation to provide adequate medical care to West; the State
> delegated that function to respondent Atkins; and respondent
> voluntarily assumed that obligation by contract.

*Id.* at 55–56.

---

delivered the written request to Defendant.

[9] Although *West v. Atkins* involved a prisoner's constitutional rights under the Eighth Amendment, the same subjective deliberate indifference standard applies to pretrial detainees under the Fourteenth Amendment. *Hare v. City of Corinth*, 74 F.3d 633, 648 (5th Cir. 1996).

Plaintiff alleges that Defendant was the head of the Medical Department at El Paso County Jail Annex. (ECF No. 13, at 3). Plaintiff further alleges that Defendant denied his requests for a shower chair and received his requests for pain medication but did not have time for Plaintiff. (ECF No. 21, at 1, 2). Accordingly, based on the foregoing case law, the Court is of the opinion that Defendant, in her alleged position as the Head of the Medical Department at the EPCJ Annex would be considered a state actor for the alleged actions taken with authority of that position.

In his answers to the Court's second questionnaire, Plaintiff alleges that he had submitted three written requests to Defendant for a shower chair, in which he addressed the necessity for this need. (ECF No. 21, at 1). In his answers to the Court's first questionnaire, Plaintiff had stated that he fell and refractured his broken bones on days that coincide with the dates he alleges he submitted the requests to Defendant. (ECF No. 15, at 2–3). Therefore, the Court infers that his requests to Defendant in which he addressed the necessity for a shower chair included the information that he had broken bones, that he fell in the shower without the use of a shower chair, and that he believes that he refractured his bones as a result.

Furthermore, a broken bone is a serious medical need. *White v. Cooper*, No. 08-CV-1321, 2009 WL 1230008, at *3 (W.D. La. May 5, 2009); *see Brown v. Hughes*, 894 F.2d 1533, 1538 (11th Cir. 1990) (finding that a painful broken foot constituted a serious medical need); *Gray v. Dorning*, No. 99-5212, 1999 WL 1336118, at *1 (6th Cir. Dec. 20, 1999) ("We find that [plaintiff's] broken wrist constituted a serious medical need."); *Jacks v. Normand*, No. 17-6328, 2018 WL 1363756, at *2 (E.D. La. Feb. 23, 2018) ("The undersigned finds that plaintiff's broken bone in his wrist constituted a 'serious medical need.'"). Thus, for the Defendant to know of a substantial risk of a broken bone and to disregard that risk by failing to

take reasonable measures to abate it, would constitute deliberate indifference. Because Plaintiff has alleged that he submitted written requests for a shower chair to Defendant, who he claims is the head of the EPCJ Annex Medical Department, and Defendant denied these requests, the Court is of the opinion that Plaintiff has stated a claim of deliberate indifference against Defendant.

2. Conversion of Defendant's 12(b)(6) Motion to a Motion for Summary Judgment

However, Defendant has attached evidence in support of her arguments to her motion. *See* (ECF No. 53-3). Absent the exclusion of this evidence by the Court, this motion must be treated as one for summary judgment under Rule 56 of the Federal Rules of Civil Procedure. *See* Fed. R. Civ. P. 12(d). Before ruling on a converted motion for summary judgment, all parties must be given a reasonable opportunity to present all the material that is pertinent to the motion. *Id.* The Court is not required by Rule 12(d) to provide express notice that it intends to treat a motion to dismiss as a motion for summary judgment. *See Mackey v. Owens*, No. 98-60758, 1999 WL 423077, at *2 (5th Cir. June 2, 1999) (per curiam) (unpublished); *Turcheck v. United States*, No. 1:16-CV-0061-BL, 2017 WL 5004831, at *5 (N.D. Tex. Oct. 12, 2017), *report and recommendation adopted by* No. 1:16-CV-061-C, 2017 WL 5028197 (N.D. Tex. Oct. 30, 2017).

Treating a motion to dismiss as a motion for summary judgment is proper "when the nonmovant is aware that additional materials have been attached to the motion to dismiss, they have had time to respond to the motion, and they are aware that the court may rule on the motion using additional materials." *Bonnet v. Ward Cty.*, No. P-12-CV-085, 2012 WL 12877956, at *2 (W.D. Tex. Nov. 30, 2012) (citing *Isquith v. Middle S. Utils., Inc.*, 847 F.2d 186, 195–96 (5th Cir. 1988); *Clark v. Tarrant Cty.*, 798 F.2d 736, 746 (5th Cir. 2004)). "[T]he simple act of

placing matters outside the pleadings before the court provides adequate notice that a motion to dismiss may be converted into a motion for summary judgment." *Mackey*, 1999 WL 423077, at *2.

Plaintiff has received the motion and additional materials, has been granted additional time to respond, and has filed his response. Therefore, because the Court will accept and consider these materials presented outside of the pleadings and finds that Plaintiff has been given a reasonable opportunity to present material that is pertinent to the motion, the Court is prepared to consider this matter under a summary judgment standard. The Court notes that although Plaintiff has had the opportunity to present material pertinent to the motion, he has not done so. Accordingly, the Court **RECOMMENDS** that Defendants' Rule 12(b)(6) Motion to Dismiss Plaintiff's deliberate indifference claims be **CONVERTED** to a Motion for Summary Judgment.

      a.   Declaration of Kim L. Martin, R.N., Administrative Director of Detention Health Care Operations for El Paso County Hospital District d/b/a University Medical Center of El Paso

Defendant asserts that she was not personally involved in the alleged deprivation of Plaintiff's constitutional rights. Defendant submits the Declaration of Kim L. Martin, R.N., pursuant to 28 U.S.C. § 1746, who is the Administrative Director of Detention Health Care Operations for El Paso County Hospital District d/b/a University Medical Center of El Paso (hereinafter "UMC"). (ECF No. 29, at 9). Ms. Martin avers that she is Defendant's supervisor. *Id.* Ms. Martin states that Defendant is employed by UMC as Nurse Manager of the EPCJ Annex pursuant to an "Interlocal Agreement between UMC and the County of El Paso," which sets forth the agreement for UMC to provide medical health care services to inmates of the El Paso County Detention System. *Id.*

Ms. Martin further states that Defendant "oversees the delivery of inmate nursing care and the process for handling special requests from inmates, but does not make any decisions on inmates' special requests or as to what medical services or medical equipment are provided to inmates—only a physician can do so." (ECF No. 29, at 9). Significantly, Ms. Martin further states that Defendant did not provide Plaintiff with any direct form of medical care or treatment, and that her job is "purely supervisory, as [Defendant] does not provide any in-person nursing care to inmates." *Id.*

The Interlocal Agreement (the "Agreement"), attached as Exhibit D-1, "is entered by and among the County of El Paso, Texas ("County") and the El Paso County Hospital District ("EPCHD") for the provision and administration of medical, [sic] and dental health care services to inmates of the El Paso County Detention System." (ECF No. 29, at 11). Under the Agreement, "[u]pon invoice by EPCHD, [the] County will pay EPCHD in accordance with Attachment D- Rate Schedule. Payment is based upon actual cost of services and supplies provided plus a 10% administrative fee, and not on a per-employee basis." *Id.* at 16.

According to the El Paso County Sheriff Health Services Plan (approved March 22, 2013) and Health Services Plan Addendum-Continuity of Prescription Medication (effective January 1, 2018), attached to the Agreement as "Attachment A-1," "[t]he Sheriff will provide a staff physician who will be responsible for the physical and mental well being of all inmates confined." (ECF No. 29, at 22). "[T]he staff physician will be available for daily sick call, examination, and treatment. Inmates may request medical services by [ ] filling out a sick slip stating their ailment [or] making an oral request when immediate pain is present." *Id.*

"It is the medical staff's responsibility to prescribe and distribute medication." (ECF No. 29, at 23). "Over-the-counter medications will be available through the Facility Clinic,

unless the inmate is evaluated by the physician and medicine is *prescribed by the physician* for a medical condition." (ECF No. 29, at 24) (emphasis added).

"The Health Services Plan Addendum: Continuity of Prescription Medication" adds that "[a] qualified medical professional shall review as soon as possible any prescription medications an inmate is taking when the inmate is taken into custody. In this context, qualified medical professionals include but are not limited to physicians, Registered Nurses (RN), and Licensed Vocational Nurses (LVN) performing their duties within the scope of their license." (ECF No. 29, at 27).

In Attachment B-10: Pharmacy Services, the Agreement states that "EPCHD shall provide a total pharmaceutical system beginning with the prescribing of medications, the filling of prescriptions, dispensing of medication and the necessary record keeping. This system shall include prescription medications and over the counter medications. All prescription medications shall be prescribed by the responsible provider and shall be administered and dispensed by a licensed nurse on a 'watch/swallow/ basis." (ECF No. 29, at 40).

Notably, EPCHD is not responsible for the provision of physical, occupational, or speech therapy nor "[t]he provision or expense related to care requiring assistance with activities of daily living, such as eating, feeding, bathing, toileting, diapering, or any other assistance in personal hygiene (skilled nursing care)." (ECF No. 29, at 44) (Attachment B-14: Services Not Covered).

Ms. Martin's Declaration refers to specific definitions for what constitutes a physical health provider and a medical provider. Pursuant to Attachment C: Staffing, a registered nurse is not considered a physical health provider. *See* (ECF No. 29, at 50) (setting forth the staffing provided by EPCHD and differentiating between a "[p]hysical health provider . . . (either a mid-

level practitioner or a physician)" and "[p]hysical health nursing, staffed with registered nurses on a 24/7 basis"). A Medical Provider is referenced as a medical doctor ("MD") and nurse practitioner ("NP") in Attachment E: Transition Services. (ECF No. 29, at 54).

> b.   Declaration of Cristina Morton, R.N., the Nurse Manager of the EPCJ Annex

Finally, Defendant submits her own declaration, pursuant to 28 U.S.C. § 1746, in which she avers that she is a registered nurse and has been employed by EPCHD as the Nurse Manager of the EPCJ Annex. (ECF No. 29, at 63). She declares that in her position as Nurse Manager, she "oversee[s] the delivery of inmate nursing care and the process for handling special requests from inmates. [She] do[es] not make any decisions on inmates' special requests or as to what medical services or medical equipment are provided to inmates—only a physician can do so." *Id.* Significantly, she declares that her role is supervisory and that she does not provide any in-person nursing care to inmates. *Id.* Finally, she states that she did not provide Plaintiff with any direct form of nursing care or treatment and did not handle, nor was aware of, any request Plaintiff may have submitted for a shower chair. *Id.* at 64.

Defendant's evidence sets forth several material facts that have not been disputed by Plaintiff.[10] First, Defendant is not the head of EPCJ Annex Medical Department but is the Nurse Manager of the EPCJ Annex. (Martin Decl., ECF No. 29, at 9).[11] Indeed, Defendant has declared that she is a Registered Nurse, having obtained her nursing degree in 2009 and her license in 2020. (Morton Decl., ECF No. 29, at 63). In her role as Nurse Manager, Defendant "oversees the delivery of inmate nursing care and the process for handling special requests from

---

[10] Though some of the following citations are not specifically cited by Defendant, the Court may consider other materials in the record. Fed. R. Civ. P. 56.

[11] According to the Rate Schedule attached to the Interlocal Agreement, there is a position of Director listed in the Administration category, which is a step above Defendant's position. (ECF No. 29, at 52).

inmates, but does not make any decisions on inmates' special requests or as to what medical services or medical equipment are provided to inmates—only a physician can do so." (Martin Decl., ECF No. 29, at 9–10).

Second, the Agreement specifically provides that EPCHD does not provide or cover the cost of services "related to care requiring assistance with activities of daily living, such as eating, feeding, bathing, toileting, diapering, or any other assistance in personal hygiene (skilled nursing care)." (Att. B-14: Services Not Covered, ECF No. 29, at 44). Indeed, pursuant to the Texas Administrative Code, Title 37, Part 9, Chapter 277, Rule § 277.6, it is the state's responsibility to ensure that "[e]ach inmate shall be given the opportunity to shower at least every other day or more often if possible. . . . Inmates should be required to shower at least every other day."

Third, even if the provision of a shower chair were considered to be medical equipment supplied by EPCHD, the Declaration of Ms. Martin states that Defendant did not have authority to "make decisions on inmates' special requests or as to what medical services or medical equipment are provided to inmates—only a physician can do so." Defendant is a registered nurse, not a physician. *See* (Morton Decl., ECF No. 29, at 63). Therefore, Defendant would not have had authority to grant such a request if it had been made to her.

Fourth, both Ms. Martin and Defendant declared that Defendant did not provide any direct form of medical care or treatment to Plaintiff. (Martin and Morton Decls., ECF No. 29, at 10, 64). Moreover, Defendant explicitly avers that she did not handle any request Plaintiff may have submitted for a shower chair, nor was she aware of any such request. (Morton Decl., ECF No. 29, at 64).

Thus, the evidence supports a conclusion that Defendant did not have the authority to

21

approve or deny a shower chair for Plaintiff. Therefore, the Court **RECOMMENDS** that Plaintiff's claim of deliberate indifference against Defendant for denying him the use of a shower chair be **DISMISSED**.

3. Whether Plaintiff has stated a claim of deliberate indifference against Defendant on the basis of denying pain medication.

Plaintiff claims that he submitted several written requests to Defendant and received a response through an attending nurse that Defendant had received Plaintiff's request, but that Defendant did not have time for Plaintiff and that Plaintiff's request was an "unrealistic expectation." (ECF No. 21, at 2).

After he finished his previous course of pain medication provided by a hospital, Plaintiff saw a physician who refused to prescribe him pain medication. *Id*. Plaintiff alleges he then sought to address the matter to Defendant, who the physician had said was the director who "gives specific orders they go by." *Id*. Plaintiff received notification through an attending nurse that Defendant had received the requests but did not have time for Plaintiff and that his requests were unrealistic. *Id*. Taking these allegations as true, the Court infers that Defendant was aware that Plaintiff had broken his leg, that he had finished his initial course of pain medication, and that the physician would not prescribe him more medication. Plaintiff alleges that Defendant, having received his written requests, did not have time for him, effectively denying him the requested pain medication.

Therefore, the sole remaining question is whether Plaintiff's allegation that he was denied pain medication for his broken bones rises to the level of "unnecessary and wanton infliction of pain repugnant to the conscience of mankind." *McCormick v. Stalder*, 105 F.3d 1059, 1061 (5th Cir. 1997) (citing *Estelle*, 429 U.S. at 105–06). Other courts have found that

22

pain resulting from broken bones can constitute a serious medical need. *See Sears v. Gusman*, No. 16-2935, 2016 WL 4991539, at *2 (E.D. La. Aug. 31, 2016), *report and recommendation adopted by* 2016 WL 4942845 (E.D. La. Sept. 16, 2016) (concluding that "severe pain" due to a "broken ankle" can constitute a "serious medical need") (collecting cases). Therefore, refusing to treat or ignoring an inmate's complaints of pain under these circumstances may rise to the level of deliberate indifference. *See id.* (collecting cases). Therefore, based on the allegations in Plaintiff's Complaint and answers to the two questionnaires, the Court cannot say that Plaintiff has not stated a claim of deliberate indifference against Defendant for refusing medication for pain due to Plaintiff's broken bones.

However, as with Defendant's Motion to Dismiss based on the allegations relating to the shower chair and for the same reasons set forth above, the Court will convert the motion, as it relates to the issue of deliberate indifference, to one for summary judgment. As a registered nurse, Defendant is unable to prescribe medication. *See* (ECF No. 29, at 40, 60–61). The Defendant has attached evidence addressing this issue as well, which was received by the Plaintiff, who responded, and more importantly was afforded reasonable opportunity to present evidence in response to this part of the Defendant's Motion. Per Kim L. Martin's and Defendant Cristina Morton's Declarations, not only can Defendant Morton not prescribe or provide medication as a registered nurse, but she also cannot directly treat any Defendant or any other person in her role as Nurse Manager. *See* (Martin and Morton Decls., ECF No. 29, at 10, 64). And although the medical staff is charged with distribution of prescribed medication, Plaintiff's allegations do not state that Defendant denied his request for medication for which he had a prescription.[12] The Court infers that Plaintiff is asserting that Defendant denied him

---

[12] Moreover, while Plaintiff does not specify whether he is claiming that Defendant denied him prescribed pain

*prescription* pain medication.

The evidence supports a conclusion that Defendant not only did not have the authority to approve or deny prescription medication, but also did not treat the Defendant. *See Thayer v. Adams*, 364 F. App'x 883, 888 (5th Cir. 2010) (per curiam) (unpublished) ("The court concluded that the [nurse] defendants did not have the power to override [the doctor's] orders and that they did not act with deliberate indifference to [plaintiff's] serious medical needs with respect to [denying] his medication."). Therefore, the Court **RECOMMENDS** that Plaintiff's claim of deliberate indifference against Defendant for denying Plaintiff prescription pain medication be **DISMISSED**.

Thus, having concluded that Plaintiff's claims brought pursuant to 42 U.S.C. § 1983 should be dismissed, the Court **RECOMMENDS** that the District Court declines to exercise supplemental jurisdiction over the Plaintiff's state health care law claim, pursuant to 28 U.S.C. § 1367(a), over any state law claims that Plaintiff may be asserting in his Complaint. A purely state law claim, untethered to a claim arising under federal law, fails to provide a basis for the exercise of supplemental jurisdiction.

## IV.   CONCLUSION

For the foregoing reasons, the Court **RECOMMENDS** that Defendant's Motion to Dismiss (ECF No. 29) be **CONVERTED** to a Motion for Summary Judgment and that it be **GRANTED** and Plaintiff's claims against Defendant, brought pursuant to 42 U.S.C. § 1983, be **DISMISSED WITH PREJUDICE**. The Court **FURTHER RECOMMENDS DECLINING** to exercise supplemental jurisdiction over any state law claim Plaintiff may be

---

medication or over-the-counter pain medication, he alleges only that he submitted written requests to Defendant after the physician he saw said that he was not going to prescribe Plaintiff pain medication. (ECF No. 21, at 2).

attempting to raise in this lawsuit.

      **SIGNED** and **ENTERED** this 11th day of February, 2021.

_____
MIGUEL A. TORRES
UNITED STATES MAGISTRATE JUDGE

**NOTICE**

**FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THE FOREGOING REPORT WITHIN FOURTEEN DAYS AFTER BEING SERVED WITH A COPY OF THIS REPORT MAY BAR DE NOVO DETERMINATION BY THE DISTRICT JUDGE OF AN ISSUE COVERED HEREIN AND SHALL BAR APPELLATE REVIEW, EXCEPT UPON GROUNDS OF PLAIN ERROR, OF ANY UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS AS MAY BE ACCEPTED OR ADOPTED BY THE DISTRICT COURT.**